UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | |
| PHILLIP GUIDRY | NO.  18-141-NJB-JVM |

**LIMITED RESPONSE TO GOVERNMENT'S OPPOSITION MOTION TO SUPPRESS**

MAY IT PLEASE THE COURT:

1. **Introduction.**

    The Defense filed it Motion and Memorandum to Suppress Evidence on August 10, 2018. Documents 15 and 16.  In accordance with the LCrR 12, the United States timely filed its Opposition on December 4, 2018.  Document 27.  The purpose of this modest, limited Response is twofold. First we wish to provide the Court and the United States with a transcript of the less-than-eight-minute recording of the interview with the defendant's wife, shortly after his arrest on March 2, 2018, and preceding the search.  The recording has been offered by the United States as Exhibit A to its Opposition.  Second, we wish to briefly argue why a hearing would be productive, including a showing that obtaining consent from the defendant's wife to search the home was critical, since the officers, in fact, lacked probable cause to have searched without it.

2. **The transcript.**

    First, if for no other reason, the transcript, attached here as Exhibit 1, while perhaps not perfect, will certainly aid the Court in addressing the issues before it.  More importantly, we wish to dissuade any notion that the defense was hiding from the recording, perhaps created by the comment by the United States that we did not submit it to the Court as part of the motion to suppress. Document 27, page 3.  As the Court will hear, the conversation is relatively short—less than eight

minutes in length. While no similar recording has been provided covering the events later that morning during the search of the residence, we are grateful for this limited opportunity the Court will get to hear of this initial encounter with the defendant's wife in order to prove the Fourth Amendment violation. We always intended to offer the recording, but at a hearing in which it could be explained in proper context.

**3. A hearing will place the recorded conversation in context.**

As previously noted, the defendant was arrested on March 2, 2018, pursuant to an out of state arrest warrant for a felony firearm violation. Importantly, no firearm or other contraband was found upon the person of the defendant or in his vehicle, upon his arrest. Moreover, other than general comments about being a "sovereign citizen," he made no incriminating statements upon his arrest. Shortly thereafter, armed with the knowledge that he had previously been convicted of at least one felony, two officers approached his wife in Hammond, miles away from the arrest, in order to attempt to secure her permission for a warrantless search of the family home near Loranger, Louisiana. If a hearing is allowed, it will become obvious that upon the defendant's arrest, since no probable cause was developed to search the family home, the police believed it essential to gain access to the home. The police reports reference at least one confidential informant telling the police several months before the arrest he or she had heard gunshots from the premises. In addition to this matter arguably being stale, and no incriminating evidence found present in the car or on the person of the defendant, other than generalizations that the defendant was a "prepper" and a self-proclaimed sovereign citizen, we submit the officers lacked enough probable cause to seek a search warrant. Their only recourse was to try at all costs to secure permission from the defendant's wife, in order to gain access to the premises to search for other firearms.

A hearing will demonstrate the total context of our representations that the consent to search the family home was not obtained voluntarily from the defendant's wife, but was the product of coercive tactics and the veiled threat of prosecution of her since she, herself, was a convicted felon. Just a few additional observations are in order. The tape does not reflect the dress of the officers. While not in uniforms, a hearing should develop that they appeared at Mrs. Guidry's place of employment, wearing black tactical vests and with their firearms in plain view. The hearing should develop that the officers suspected the defendant and his wife love their dogs and would not want them to be hurt, stated in the repeated context of "needing" to get into her home. The officers played upon that affection with comments about not wanting to shoot the dogs if she did not grant the permission sought, to include even a shocking comment by one officer about having a conscience more about shooting dogs than people.

Contrary to the representations by the United States ( Document 27, page 7, bottom; page 9, top; and page 10, bottom), Mrs. Guidry did not address six guns during the interview at her place of business, but only three of them. While she may have assisted the police in locating the other three once they were on her property, without a recording of such, the defense should be allowed to develop the facts surrounding these at a hearing.

A hearing should develop the proper context of comments that Mrs. Guidry was a convicted felon, with a "history," who needed to remain employed to take care of her child. A hearing should demonstrate the repeated assurance that the officers were not interested in her, but only her husband, with the implication that, if she did not cooperate, their full interest could turn to include her. A hearing should develop the proper context of coercion by the officers stating they did not want to cut up her fence, use a battering ran to bash in the door to get inside, or shoot or hurt a dog.

3

A hearing should also develop that reliance on *United States v. Ponce*, 8 F3d 989, 998 (5th Cir. 1993), to infer that Mrs. Guidry should have understood a right to refuse the search of her home is misplaced. Mr. Ponce had three prior convictions. Mrs. Guidry had one, involving possession of hydrocodone, over 13 years before the instant search of her home, with no factors indicating similarity. And only because the United States appears to have mentioned it four times, the Court will plainly hear, near the ends of the recording, that the investigators ask to use the restroom at her place of employment. No implication should be created that Mrs. Guidry offered use of the facilities, until the police asked. Document 27, pages 2, 8, and 9.

4. **Conclusion.**

The United States admits that to satisfy the consent exception to the Fourth Amendment, it must establish the consent was freely and voluntarily given. Document 27. Page 5. As we wrote earlier, where a defendant's home has been subjected to a warrantless search, the Government bears the ultimate burden of proving justification to have conducted the search without a warrant. *United States v. Garcia-Lopez*, 809 F.3d 834, 838 (5th Cir. 2016), citing *United States v. De La Fuente*, 548 F.2d 528, 533 (5th Cir. 1977). Document 16. Page 2.

But now the Government urges the Court to base its decision merely on the pleadings, including a relatively short, recorded conversation, without the ability of the defense to place that conversation in the proper context of overbearing police tactics, which coerced cooperation by the defendant's wife and resulted in a permission to search which was unconstitutionally obtained. At a minimum, with such an important Fourth Amendment issue at stake, the Court should conduct a hearing.

Moreover, we maintain no exigent circumstances justified the failure to try to obtain a

4

warrant (even though we maintain the officers lacked probable cause to have obtained one), since Phillip Guidry had been arrested and the officers knew Mrs. Guidry was at work.  They would have had ample time to try to secure a search warrant with the homeowners away.  *United States v. Morales*, 171 F.3d 978, 982 (5th Cir. 1999).

Respectfully Submitted:

**MANASSEH, GILL, KNIPE & BÉLANGER, P.L.C.**

s/ James P.  Manasseh
JAMES P.  MANASSEH
Louisiana Bar No.  19022
Attorney for Defendant
8075 Jefferson Hwy.
Baton Rouge, LA  70809
(225) 383-9703 (Telephone)
(225) 383-9704 (Facsimile)

s/ André Bélanger
ANDRÉ BÉLANGER
Louisiana Bar No.  26797
Attorney for Defendant
8075 Jefferson Hwy.
Baton Rouge, LA  70809
(225) 383-9703 (Telephone)
(225) 383-9704 (Facsimile)

Respectfully Submitted:

**MANASSEH, GILL, KNIPE & BÉLANGER, P.L.C.**

s/ W. Robert Gill
W. ROBERT GILL
Louisiana Bar No.  20557
Attorney for Defendant
8075 Jefferson Hwy.
Baton Rouge, LA 70809
(225) 383-9703 (Telephone)
(225) 383-9704 (Facsimile)

s/ Ian F. Hipwell
IAN F. HIPWELL
Louisiana Bar No.  06947
Attorney for Defendant
8075 Jefferson Hwy.
Baton Rouge, LA 70809
(225) 383-9703 (Telephone)
(225) 383-9704 (Facsimile)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | |
| PHILLIP GUIDRY | NO. 18-141-NJB-JVM |

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing LIMITED RESPONSE TO GOVERNMENT'S MOTION TO SUPPRESS as part of a Motion for Leave of Court request with the Clerk of Court by using the CM/ECF which will send a notice of electronic filing to opposing counsel in the United States Attorney's Office.

Baton Rouge, Louisiana this 7th day of December, 2018.

s/ James P. Manasseh
JAMES P. MANASSEH


s/ W. Robert Gill
W. ROBERT GILL


s/ André Belanger
ANDRÉ BÉLANGER


s/ Ian F. Hipwell
IAN F. HIPWELL

6